1  Richard R. Barker
2  Acting United States Attorney
   Eastern District of Washington
3  Lisa C. Cartier Giroux
   Assistant United States Attorney
4  Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
6

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 3 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

7
8              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF WASHINGTON
9

10  UNITED STATES OF AMERICA,

11              Plaintiff,          Case No.: 2:24-CR-128-TOR

12          v.                     Plea Agreement

13
14  ABRAHAM AGUILAR-LEON,

15              Defendant.

16

17      Plaintiff United States of America, by and through Richard R. Barker,

18  Acting United States Attorney the Eastern District of Washington, and Lisa C.

19  Cartier Giroux, Assistant United States Attorney for the Eastern District of

20  Washington, and Defendant Abraham Aguilar-Leon ("Defendant"), both

21  individually and by and through Defendant's counsel, J. Stephen Roberts, Jr., agree

22  to the following Plea Agreement.

23      1.    Guilty Plea and Maximum Statutory Penalties

24      Defendant agrees to enter a plea of guilty to the Indictment filed on October

25  2, 2024, which charges Defendant with Illegal Possession of a Machine Gun, in

26  violation of 18 U.S.C. §§ 922(o), 924(a)(2), a Class C felony.

27      Defendant understands that the following potential penalties apply:

28          a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

1      b.    a term of supervised release of not more than 3 years;

2      c.    a fine of up to $250,000; and

3      d.    a $100 special penalty assessment.

4    2.    <u>Supervised Release</u>

5    Defendant understands that if Defendant violates any condition of

6  Defendant's supervised release, the Court may revoke Defendant's term of

7  supervised release, and require Defendant to serve in prison all or part of the term

8  of supervised release authorized by statute for the offense that resulted in such term

9  of supervised release without credit for time previously served on post-release

10  supervision, up to the following terms:

11      a.    5 years in prison if the offense that resulted in the term of

12            Supervised Release is a class A felony,

13      b.    3 years in prison if the offense that resulted in the term of

14            Supervised Release is a class B felony, and/or

15      c.    2 years in prison if the offense that resulted in the term of

16            Supervised Release is a class C felony.

17    Accordingly, Defendant understands that if Defendant commits one or more

18  violations of supervised release, Defendant could serve a total term of

19  incarceration greater than the maximum sentence authorized by statute for

20  Defendant's offense or offenses of conviction.

21    3.    <u>The Court is Not a Party to this Plea Agreement</u>

22    The Court is not a party to this Plea Agreement and may accept or reject it.

23  Defendant acknowledges that no promises of any type have been made to

24  Defendant with respect to the sentence the Court will impose in this matter.

25    Defendant understands the following:

26      a.    sentencing is a matter solely within the discretion of the Court;

27      b.    the Court is under no obligation to accept any recommendations

28            made by the United States or Defendant;

PLEA AGREEMENT - 2

1            c.    the Court will obtain an independent report and sentencing

2                recommendation from the United States Probation Office;

3            d.    the Court may exercise its discretion to impose any sentence it

4                deems appropriate, up to the statutory maximum penalties;

5            e.    the Court is required to consider the applicable range set forth

6                in the United States Sentencing Guidelines, but may depart

7                upward or downward under certain circumstances; and

8            f.    the Court may reject recommendations made by the United

9                States or Defendant, and that will not be a basis for Defendant

10            to withdraw from this Plea Agreement or Defendant's guilty

11            plea.

12    4.    <u>Potential Immigration Consequences of Guilty Plea</u>

13        If Defendant is not a citizen of the United States, Defendant understands the

14 following:

15            a.    pleading guilty in this case may have immigration

16                consequences;

17            b.    a broad range of federal crimes may result in Defendant's

18                removal from the United States, including the offense to which

19                Defendant is pleading guilty;

20            c.    removal from the United States and other immigration

21                consequences are the subject of separate proceedings; and

22            d.    no one, including Defendant's attorney or the Court, can predict

23                with absolute certainty the effect of a federal conviction on

24                Defendant's immigration status.

25        Defendant affirms that Defendant is knowingly, intelligently, and voluntarily

26 pleading guilty as set forth in this Plea Agreement, regardless of any immigration

27 consequences that Defendant's guilty plea may entail.

28

PLEA AGREEMENT - 3

5.  <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

        a.     the right to a jury trial;

        b.     the right to see, hear and question the witnesses;

        c.     the right to remain silent at trial;

        d.     the right to testify at trial; and

        e.     the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.  <u>Admissibility of Facts and Prior Statements</u>

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410

PLEA AGREEMENT - 4

1  with regard to any facts Defendant admits and/or any statements Defendant makes

2  in court.

3        7.    Elements of the Offense

4        The United States and Defendant agree that in order to convict Defendant of

5  Illegal Possession of a Machine Gun, in violation of 18 U.S.C. §§ 922(o),

6  924(a)(2), the United States would have to prove the following beyond a

7  reasonable doubt.

8              a.    *First*, on or about July 14, 2024, within the Eastern District of

9                   Washington, Defendant possessed a machine gun, specifically a

10                   "glock switch", which is a part designed and intended solely

11                   and exclusively for use in converting a semi-automatic pistol

12                   into a weapon that shoots, is designed to shoot, or can be

13                   readily restored to shoot multiple shots automatically, without

14                   manual reloading, by single function of the trigger; and

15              b.    *Second*, Defendant knew it was a machine gun or was aware of

16                   the firearm's essential characteristics that made it a machine

17                   gun as defined.

18        8.    Factual Basis and Statement of Facts

19        The United States and Defendant stipulate and agree to the following: the

20  facts set forth below are accurate; the United States could prove these facts beyond

21  a reasonable doubt at trial; and these facts constitute an adequate factual basis for

22  Defendant's guilty plea.

23        The United States and Defendant agree that this statement of facts does not

24  preclude either party from presenting and arguing, for sentencing purposes,

25  additional facts that are relevant to the Sentencing Guidelines computation or

26  sentencing.

27        On or about July 14, 2024, at approximately 9:40pm, Chelan County

28  Sheriff's Office (CSCO) Deputies were working uniform patrol assisting the

PLEA AGREEMENT - 5

1   Chelan County Coroner with a missing person who had been located deceased in

2   the water near River Walk Park. As the Deputies were assisting, they heard a

3   disturbance coming from the Dan Gordon Bridge which was approximately 250 –

4   300 yards to the southwest of the location. The disturbance was about 10 -15

5   minutes of screaming and cursing.

6        Deputy Soreano went to investigate the disturbance while Deputy Wiggum

7   continued to assist the coroner. Deputy Soreano responded to the area of the

8   disturbance and a short time later requested assistance. Deputy Wiggum quickly

9   responded and observed Deputy Soreano with a shirtless male wearing black shorts

10  and black shoes and wearing a green backpack. That male would later be

11  identified as Abraham Aguilar-Leon (AGUILAR-LEON).

12       A male who was driving a grey Nissan Titan approached and stopped in the

13  north bound lane. The driver of the Nissan had his window down and was pointing

14  at AGUILAR-LEON as he asked Deputy Wiggum if that was the guy who

15  threatened to shoot him. The driver was directed to pull over to the side of the

16  road so Deputy Wiggum could speak with him. Deputy Wiggum met with the

17  driver of the Nissan and noticed a female sitting in the passenger seat. The driver

18  told Deputy Wiggum he and the female were driving across the Dan Gordon

19  Bridge when a male jumped in front of his truck and threatened to shoot him.

20       AGUILAR-LEON was brought over, and the driver was told that the person

21  he was being shown may not be the person who threatened him. The driver looked

22  at AGUILAR-LEON and told the deputy that the individual who threatened to

23  shoot him was the person being shown to him (AGUILAR-LEON). Deputy

24  Wiggum then determined there was probable cause to arrest AGUILAR-LEON for

25  felony threats.

26       Deputy Wiggum relayed the positive identification information to Deputy

27  Soreano. As the Deputies attempted to place AGUILAR-LEON under arrest for

28  the felony threats, he attempted to pull away and flee. After a brief struggle, the

PLEA AGREEMENT - 6

1    Deputies were able to gain control of AGUILAR-LEON and place him under
2    arrest. As the Deputies were taking AGUILAR-LEON into custody, they removed
3    AGUILAR-LEON's backpack as it was in the way of properly applying the
4    handcuffs. As the Deputies were escorting AGUILAR-LEON to the patrol vehicle,
5    he became belligerent and began cursing at the Deputies. AGUILAR-LEON
6    stated, "fuck you nigga" and "suck my dick nigga" numerous times, which was
7    recorded on body camera. AGUILAR-LEON stated, "touch me again nigga, see
8    what happens".

9    AGUILAR LEON was searched incident to arrest by Deputy Soreano then
10   placed in the patrol car. No weapons were found on his person. Per CCSO
11   Department policy, CCSO law enforcement personnel are unable to leave large
12   bags such as backpacks at the jail for suspects and they are booked into evidence
13   for safe keeping. Also, per CCSO Department policy, bags must be inventoried
14   prior to being logged into evidence to document items of value and ensure there
15   are no hazards. On body camera, Deputy Wiggum asked AGUILAR-LEON if
16   there was anything in his backpack, they [law enforcement] needed to know about.
17   AGUILAR-LEON said something to the effect of "you are not going through my
18   backpack". Deputy Wiggum then informed AGUILAR-LEON, he was under
19   arrest and his bag was going to be searched. Deputy Soreano attempted to read
20   AGUILAR-LEON his constitutional rights, but AGUILAR-LEON screamed over
21   Deputy Soreano and refused to acknowledge his rights.

22   Deputy Wiggum then searched AGUILAR-LEON's backpack on the hood of
23   his patrol car. As Deputy Wiggum opened the main compartment, he immediately
24   observed the distinct, black handgrips of two pistols. Deputy Wiggum removed
25   both pistols and placed them on the hood of his patrol vehicle. The first handgun
26   was a silver and black Glock 37 .45 GAP with a serial number on the slide of *barrel*
27   "FUD338" but without a serial number on the frame. It was equipped with a red
     *or Slide.*
28   dot optic on the slide and a flashlight/green laser mounted on front. The magazine

PLEA AGREEMENT - 7

1  seated in the Glock firearm contained five .40 ACP rounds; there was also a .40
2  caliber round in the chamber.

3       The second firearm was a polymer Glock-style firearm. The second pistol
4  was black and had no visible markings or serial number. On the underside of
5  frame, there was a blank serial number plate. On the frame was stamped
6  POLYMER80, INC PF94OSC. The magazine was inserted and there was no
7  round in the chamber. The magazine contained twelve 9 mm rounds.

8       Deputy Wiggum turned the Glock 37 over to a federal task force officer
9  embedded with Chelan County because the firearm appeared to have a "Glock
10 switch" attached which could convert the firearm into an automatic weapon. The
11 firearm was sent to the Bureau of Alcohol, Tobacco, Firearms, and Explosives
12 (ATF) Firearms and Technology Division for examination and testing. The
13 firearm was examined, and test fired. The ATF Firearms Enforcement Officer who
14 examined the firearm concluded that there was a "Glock switch" attached to the
15 Glock 37. Specifically, there was a drop-in replacement for the factory polymer
16 slide cover plate of the firearm. The drop-in incorporated a "leg", a housing, and a
17 selector bar. The sole purpose of the "leg" is to push down the trigger bar as the
18 slide goes into battery. The effect is that it takes the sear surface of the trigger bar
19 out of engagement with the striker, allowing the striker to move forward and ignite
20 the primer of the chambered cartridge. The ATF Firearms Enforcement Officer
21 concluded based on his examination of the "Glock switch" was that it was
22 designed and intended for use in converting a semi-automatic weapon into a
23 machinegun, allowing the weapon to shoot automatically, more than one shot,
24 without manual reloading, by single function of the trigger.

25       The ATF Firearms Enforcement Officer also test fired the Glock 37 with the
26 "Glock switch" attached. The "Glock switch" enabled the firearm to fire cartridges
27 automatically. He concluded that the "Glock switch" is a part designed and
28 intended solely and exclusively for use in converting a semi-automatic pistol into a

PLEA AGREEMENT - 8

1  weapon that shoots, is designed to shoot, or can be readily restored to shoot
2  multiple shots automatically, without manual reloading, by single function of the
3  trigger.

4      The ballistic images from test firing of the Glock 37 were entered into
5  NIBIN. A NIBIN lead notification was subsequently generated indicating that the
6  firearm may have been used in a shooting in Sunnyside, WA on February 16, 2024,
7  during which a male victim's car had been shot at numerous times as it was parked
8  outside his girlfriend's residence. A female witness reported that there had been an
9  altercation earlier before the shooting between an individual she knew as
10 "Abraham" and the male victim. The male victim heard the gunshots and a 911
11 caller both reported that it sounded like "automatic gun fire".

12     Defendant stipulates and agrees that he knew that the "Glock switch" was a
13 machine gun or was aware of its essential characteristics that made it a machine
14 gun as defined.

15     All of the foregoing occurred in the Eastern District of Washington.

16     9.    The United States' Agreements

17     The United States Attorney's Office for the Eastern District of Washington
18 agrees not to bring additional charges against Defendant based on information in
19 its possession at the time of this Plea Agreement that arise from conduct that is
20 either charged in the Indictment or identified in discovery produced in this case,
21 unless Defendant breaches this Plea Agreement before sentencing.

22     10.    United States Sentencing Guidelines Calculations

23     Defendant understands and acknowledges that the United States Sentencing
24 Guidelines ("USSG" or "Guidelines") apply and that the Court will determine
25 Defendant's advisory range at the time of sentencing, pursuant to the Guidelines.
26 The United States and Defendant agree to the following Guidelines calculations.

27

28

PLEA AGREEMENT - 9

a.    *Base Offense Level*

The United States and the Defendant stipulate and agree that the base offense level is 18. *See* USSG §2K2.1(a)(5).

b.    *Special Offense Characteristics*

i. The United States and the Defendant stipulate and agree that Defendant's base offense level is increased by 4 levels because the firearms lacked a serial number. *See* USSG §2K2.1(b)(4)(A).

ii. The United States and the Defendant stipulate and agree that the Defendant's base offense level is increased by 4 levels because he used or possessed any firearm or ammunition in connection with another felony offense. *See* USSG §2K2.1(b)(6)(B).

c.    *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive

PLEA AGREEMENT - 10

for any controlled substance.

    d.  *Zero Point Offender*

   The United States and Defendant agree that Defendant is ineligible for any reduction. *See* USSG §4C1.1.

    e.  *Agreements Regarding Representations to the Court*

   The United States has a duty of candor to the tribunal.  If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

   Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

   With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

       i.  The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

       ii.  The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

       iii.  The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

PLEA AGREEMENT - 11

iv.     The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v.     The United States and Defendant may each respond to any arguments presented by the other;

vi.     In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.     In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.     The United States may make any sentencing arguments the United States deems appropriate so long as they are

PLEA AGREEMENT - 12

1                       consistent with this Plea Agreement, including arguments

2                       arising from Defendant's uncharged conduct, conduct set

3                       forth in charges that will be dismissed pursuant to this

4                       Plea Agreement, and Defendant's relevant conduct; and

5       ix.     Defendant may make any sentencing arguments

6                       consistent with this Plea Agreement Defendant deems

7                       appropriate.

8       f.     *No Other Agreements*

9  The United States and Defendant have no other agreements regarding the

10 Guidelines or the application of any Guidelines enhancements, departures, or

11 variances.

12      g.     *Criminal History*

13 The United States and Defendant have no agreement and make no

14 representations about Defendant's criminal history category, which will be

15 determined by the Court after the United States Probation Office prepares and

16 discloses a Presentence Investigative Report.

17      11.     Incarceration

18 At the time of Defendant's original sentencing in the District Court, the

19 United States agrees to make a sentencing recommendation to the Court that is

20 consistent with this Plea Agreement. The United States' agreement to make such a

21 recommendation is limited exclusively to the time of Defendant's original

22 sentencing in the District Court. The United States' agreement to make such a

23 recommendation does not prohibit or limit in any way the United States' ability to

24 argue for or against any future sentencing modification that takes place after

25 Defendant's original sentencing in the District Court, whether that modification

26 consists of an amendment to the Guidelines, a change to a statutory minimum or

27 maximum sentence, any form of compassionate release, any violation of

28 Supervised Release, or any other modification that is known or unknown to the

PLEA AGREEMENT - 13

1   parties at the time of Defendant's original criminal sentencing.  In this Plea

2   Agreement, the United States makes no promises or representations about what

3   positions the United States will take or recommendations the United States will

4   make in any proceeding that occurs after Defendant's original sentencing in the

5   District Court.

6       The United States and Defendant may each recommend any legal term of

7   incarceration.

8       The United States has communicated with the Chelan County prosecutor in

9   Case No. 24-1-00259-04 in the Superior Court of Washington for Chelan County.

10  He has indicated that he will dismiss the charges in that case upon the issuance of

11  the judgment of conviction in this matter.  The United States has also provided

12  defense counsel with a letter from the Yakima County Prosecuting Attorney who

13  has agreed to not seek charges against Defendant for Sunnyside, Yakima County

14  case number 24S01374 for the firearm discharge on February 16, 2024, as a result

15  of the Defendant's plea of guilty in this matter.

16      12.   Supervised Release

17      The United States and Defendant each agree to recommend 3 years of

18  supervised release.  Defendant agrees that the Court's decision regarding the

19  conditions of Defendant's Supervised Release is final and non-appealable; that is,

20  even if Defendant is unhappy with the conditions of Supervised Release ordered by

21  the Court, that will not be a basis for Defendant to withdraw Defendant's guilty

22  plea, withdraw from this Plea Agreement, or appeal Defendant's conviction,

23  sentence, or any term of Supervised Release.

24      The United States and Defendant agree to recommend that in addition to the

25  standard conditions of supervised release imposed in all cases in this District, the

26  Court should also impose the following conditions:

27          a.    The United States Probation Officer may conduct, upon

28                reasonable suspicion, and with or without notice, a search of

PLEA AGREEMENT - 14

1                Defendant's person, residences, offices, vehicles, belongings,

2                and areas under Defendant's exclusive or joint control.

3         b.     Defendant shall participate and complete such drug testing and

4              · drug treatment programs as the Probation Officer directs.

5         c.     Defendant shall complete mental health evaluations and

6              treatment, including taking medications prescribed by the

7              treatment provider. Defendant shall allow reciprocal release of

8              information between the Probation Officer and the treatment

9              provider. Defendant shall contribute to the cost of treatment

10             according to the Defendant's ability.

11     13.   Criminal Fine

12     The United States and Defendant may make any recommendation

13 concerning the imposition of a criminal fine. Defendant acknowledges that the

14 Court's decision regarding a fine is final and non-appealable; that is, even if

15 Defendant is unhappy with a fine ordered by the Court, that will not be a basis for

16 Defendant to withdraw Defendant's guilty plea, withdraw from this Plea

17 Agreement, or appeal Defendant's conviction, sentence, or fine.

18     14.   Property Disposal

19     Defendant does not claim an interest in the below-listed assets and does not

20 oppose their disposal by the ATF:

21       a silver and black Glock 37 .45 GAP with a serial number on the slide
22       of "FUD338" but no serial number on the frame, equipped with a red
        dot optic on the slide and a flashlight/green laser mounted on front
23       and a magazine seated in the Glock firearm containing five .40 ACP
24       rounds and an attached Glock switch.

25       a black polymer Glock-style firearm with POLYMER80, INC
26       PF94OSC stamped on the frame, but with no visible markings or
        serial number, with a blank serial number plate on the underside of
27       frame, and an inserted magazine containing twelve 9mm rounds with
28       no round in the chamber.

PLEA AGREEMENT - 15

1  Defendant agrees to hold all law enforcement and the United States, its
2  agents, and its employees harmless from any claims whatsoever arising in
3  connection with the seizure and disposal of any assets covered by this agreement.

4  Defendant waives further notice of any proceedings involving ATF's
5  disposal of the seized assets listed above.

6  15.  Mandatory Special Penalty Assessment

7  Defendant agrees to pay the $100 mandatory special penalty assessment to
8  the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C.
9  § 3013.

10  16.  Payments While Incarcerated

11  If Defendant lacks the financial resources to pay the monetary obligations
12  imposed by the Court, Defendant agrees to earn money toward these obligations by
13  participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14  17.  Additional Violations of Law Can Void Plea Agreement

15  The United States and Defendant agree that the United States may, at its
16  option and upon written notice to the Defendant, withdraw from this Plea
17  Agreement or modify its sentencing recommendation if, prior to the imposition of
18  sentence, Defendant is charged with or convicted of any criminal offense or tests
19  positive for any controlled substance.

20  18.  Waiver of Appeal Rights

21  Defendant understands that Defendant has a limited right to appeal or
22  challenge Defendant's conviction and the sentence imposed by the Court.

23  In return for the concessions that the United States has made in this Plea
24  Agreement, Defendant expressly waives all of Defendant's rights to appeal any
25  aspect of Defendant's conviction and/or the sentence the Court imposes, on any
26  grounds.

27  Defendant expressly waives Defendant's right to appeal any fine, term of
28  supervised release, or restitution order imposed by the Court.

PLEA AGREEMENT - 16

1    Defendant expressly waives the right to file any post-conviction motion

2  attacking Defendant's conviction and sentence, including a motion pursuant to 28

3  U.S.C. § 2255, except one based on ineffective assistance of counsel arising from

4  information not now known by Defendant and which, in the exercise of due

5  diligence, Defendant could not know by the time the Court imposes sentence.

6    Nothing in this Plea Agreement shall preclude the United States from

7  opposing any post-conviction motion for a reduction of sentence or other attack

8  upon the conviction or sentence, including, but not limited to, writ of habeas

9  corpus proceedings brought pursuant to 28 U.S.C. § 2255.

10    19.    Withdrawal or Vacatur of Defendant's Plea

11    Should Defendant successfully move to withdraw from this Plea Agreement

12  or should Defendant's conviction be set aside, vacated, reversed, or dismissed

13  under any circumstance, then:

14        a.    Any obligations, commitments, or representations made by the

15            United States in this Plea Agreement shall become null and

16            void;

17        b.    The United States may prosecute Defendant on all available

18            charges;

19        c.    The United States may reinstate any counts that have been

20            dismissed, have been superseded by the filing of another

21            charging instrument, or were not charged because of this Plea

22            Agreement; and

23        d.    The United States may file any new charges that would

24            otherwise be barred by this Plea Agreement.

25    The decision to pursue any or all of these options is solely in the discretion

26  of the United States Attorney's Office.

27    Defendant agrees to waive any objections, motions, and/or defenses

28  Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

PLEA AGREEMENT - 17

charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____          3/13/25
Lisa C. Cartier Giroux                      Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and

PLEA AGREEMENT - 18

1  voluntarily. I have consulted with my attorney about my rights, I understand those
2  rights, and I am satisfied with the representation of my attorney in this case. No
3  other promises or inducements have been made to me, other than those contained
4  in this Plea Agreement. No one has threatened or forced me in any way to enter
5  into this Plea Agreement. I agree to plead guilty because I am guilty.

6

7

8  Abraham Aguilar-Leon                           3/13/25
   Defendant                                      Date
9

10

11      I have read the Plea Agreement and have discussed the contents of the
   agreement with my client. The Plea Agreement accurately and completely sets
12  forth the entirety of the agreement between the parties. I concur in my client's
13  decision to plead guilty as set forth in the Plea Agreement. There is no legal
14  reason why the Court should not accept Defendant's guilty plea.
15

16

17  J. Stephen Roberts, Jr.                        3/13/2025
   Attorney for Defendant                         Date
18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT - 19